# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)
JUNE 2026 00170
E-Filing Number: 2606001595

| | |
|---|---|
| PLAINTIFF'S NAME<br>MELISSA YUNEZ | DEFENDANT'S NAME<br>CHF INDUSTRIES, INC., ALIAS: CHF INDUSTRIES |
| PLAINTIFF'S ADDRESS<br>617 N LAW STREET<br>ALLENTOWN PA 18102 | DEFENDANT'S ADDRESS<br>5100 WATSON STREET<br>LORIS SC 29569 |
| PLAINTIFF'S NAME<br>YESID YUNEZ | DEFENDANT'S NAME<br>WALMART, INC., ALIAS: WALMART |
| PLAINTIFF'S ADDRESS<br>617 N LAW STREET<br>ALLENTOWN PA 18102 | DEFENDANT'S ADDRESS<br>1 CUSTOMER DRIVE<br>BENTONVILLE AR 72716 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>BLUESTAR ALLIANCE, LLC, ALIAS: BROOKSTONE |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>240 MADISON AVENUE 15TH FLOOR<br>NEW YORK NY 10016 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 4 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal<br>☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS |
|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration ☐ Mass Tort ☐ Commerce ☐ Settlement<br>☒ Jury ☐ Savings Action ☐ Minor Court Appeal ☐ Minors<br>☐ Non-Jury ☐ Petition ☐ Statutory Appeals ☐ W/D/Survival<br>☐ Other: |

CASE TYPE AND CODE
2P - PRODUCT LIABILITY

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

FILED
PRO PROTHY
JUN 01 2026
S. GILLIAM

IS CASE SUBJECT TO COORDINATION ORDER?
YES NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: MELISSA YUNEZ , YESID YUNEZ

Papers may be served at the address set forth below.

| | |
|---|---|
| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>JOSEPH F. LEESON | ADDRESS<br>70 E BROAD ST<br>PO BOX 1426<br>BETHLEHEM PA 18016 |
| PHONE NUMBER<br>(610)691-3320 — FAX NUMBER<br>(610)691-8719 | |
| SUPREME COURT IDENTIFICATION NO.<br>328520 | E-MAIL ADDRESS<br>jleeson@leeson-law.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*JOSEPH LEESON* | DATE SUBMITTED<br>Monday, June 01, 2026, 01:14 pm |

**COMPLETE LIST OF DEFENDANTS:**

1. CHF INDUSTRIES, INC.
   ALIAS: CHF INDUSTRIES
   5100 WATSON STREET
   LORIS SC 29569
2. WALMART, INC.
   ALIAS: WALMART
   1 CUSTOMER DRIVE
   BENTONVILLE AR 72716
3. BLUESTAR ALLIANCE, LLC
   ALIAS: BROOKSTONE
   240 MADISON AVENUE 15TH FLOOR
   NEW YORK NY 10016
4. DECKERS OUTDOOR CORPORATION
   ALIAS: KOOLABURRA BY UGG
   250 COROMAR DRIVE
   GOLETA CA 93117

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA CIVIL DIVISION**

Filed and Attested by the Office of Judicial Records 01 JUN 2026 01:14 pm S. GILLIAM

MELISSA YUNEZ and YESID YUNEZ :
Plaintiffs, :

v. :

WALMART INC., A/K/A WALMART; CHF INDUSTRIES, INC., A/K/A CHF HOME FURNISHINGS A/K/A CHF INDUSTRIES; BLUESTAR ALLIANCE LLC, A/K/A BLUESTAR ALLIANCE D/B/A BROOKSTONE; DECKERS OUTDOOR CORPORATION, A/K/A DECKERS BRANDS A/K/A DECKERS OUTDOOR and D/B/A KOOLABURRA BY UGG :

Defendants. :

Jury Trial Demanded

**NOTICE TO DEFEND – CIVIL**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333 TTY**
**(215) 451-6197**

# AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333 TTY**
**(215) 451-619**

**IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL DIVISION**

MELISSA YUNEZ and YESID YUNEZ :
Plaintiffs, :
:
v. :
:
WALMART INC., A/K/A WALMART; CHF :
INDUSTRIES, INC., A/K/A CHF HOME :
FURNISHINGS A/K/A CHF INDUSTRIES; :
BLUESTAR ALLIANCE LLC, A/K/A BLUESTAR :
ALLIANCE D/B/A BROOKSTONE; DECKERS :
OUTDOOR CORPORATION, A/K/A DECKERS :
BRANDS A/K/A DECKERS OUTDOOR and :
D/B/A KOOLABURRA BY UGG
:
: Jury Trial Demanded
Defendants. :

**<u>CIVIL ACTION – COMPLAINT</u>**

NOW COMES, Plaintiff, Melissa Yunez, (hereinafter, referred to as "Plaintiff") and her husband Yesid Yunez, (hereinafter, collectively referred to as the "Plaintiffs") by and through their undersigned counsel, Joseph F. Leeson, III, Esquire of the law firm Leeson & Leeson, and respectfully file this Complaint against Walmart, Inc. a/ka Walmart, CHF Industries, Inc. a/k/a CHF Home Furnishings a/k/a CHF Industries, Bluestar Alliance LLC a/k/a Bluestar Alliance d/b/a Brookstone, Deckers Outdoor Corporation a/k/a Deckers Brands a/k/a Decker Outdoor and d/b/a Koolaburra by UGG and John Doe Manufacturers, Designers and Distributors in support thereof avers as follows:

## I. PARTIES

1. Plaintiff Melissa Yunez is an adult individual residing in the Commonwealth of Pennsylvania.

2. Plaintiff Yesid Yunez is an adult individual residing in the Commonwealth of Pennsylvania.

3. Defendant Walmart Inc., also known as and doing business as Walmart (hereinafter, referred to as "Walmart") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 702 S.W. 8th Street, Bentonville, Arkansas 72716. At all times relevant hereto, Walmart Inc. was engaged in the business of selling consumer goods to the public, including electric heated blankets, throughout the United States and within the Commonwealth of Pennsylvania. Walmart Inc., a seller and distributor of consumer products, sold, marketed, distributed, and placed into the stream of commerce the electric heated blanket at issue in this matter.

4. Defendant CHF Industries, Inc., also known as and doing business as CHF Home Furnishings and CHF Industries (hereinafter referred to as "CHF") is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1 Park Avenue, New York, New York 10016. At all times relevant hereto, CHF Industries, Inc. was engaged in the business of designing, manufacturing, assembling, importing, marketing, and distributing home textile products, including electric heated blankets sold under the Brookstone brand name. CHF Industries, Inc. developed, manufactured, assembled, imported, distributed, and/or otherwise placed the electric heated blanket at issue into the stream of commerce with the expectation that it would be purchased and used by consumers, including the Plaintiff.

5. Defendant Bluestar Alliance LLC, also known as and doing business as Bluestar Alliance (hereinafter, referred to as "Bluestar") is a limited liability company organized and existing under the laws of the State of New York with its principal place of business located at 1411 Broadway, 31st Floor, New York, New York 10018. Bluestar Alliance LLC is the owner and

licensor of the Brookstone trademark and brand name. At all times relevant hereto, Bluestar Alliance LLC licensed the Brookstone brand name and related intellectual property to manufacturers, distributors, and retailers for use on consumer goods, including electric heated blankets, and authorized the marketing, distribution, and sale of such products throughout the United States, including within the Commonwealth of Pennsylvania.

6. Defendant Deckers Outdoor Corporation, also known as and doing business as Deckers Brands and Deckers Outdoor (hereinafter, referred to as "Deckers") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 250 Coromar Drive, Goleta, California 93117. Deckers Outdoor Corporation is the owner of the Koolaburra by UGG brand name and related trademarks. At all times relevant hereto, Deckers Outdoor Corporation authorized the use of the Koolaburra by UGG branding on consumer goods, including the electric heated blanket at issue, and participated in the branding, marketing, and distribution of such products in the United States, including within the Commonwealth of Pennsylvania.

7. At all relevant times, Defendants Deckers and BlueStar marketed, distributed, and/or sold the product that is the subject of this action (the "Product"). The Product was placed into the stream of commerce bearing the name, branding, trademarks, and/or trade dress of one or both Defendants, thereby representing to consumers that the Product was their product. Through the use of their names, trademarks, and branding on the Product and in associated packaging, labeling, and marketing materials, Defendants held the Product out to the public as their own product. By placing their names and reputations on the Product, Defendants provided an assurance to consumers that the Product was safe, properly designed, properly manufactured, and suitable for its intended use. Consumers, including Plaintiff, reasonably relied upon the reputation,

branding, and representations of Defendants when purchasing and using the Product. Under the doctrine set forth in Restatement (Second) of Torts § 400, as adopted by the Pennsylvania Supreme Court[1], one who puts out a product as his own is subject to the same liability as though he were its manufacturer.

8. At all relevant times, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, and selling electric heated blankets to consumers throughout the United States, including within Pennsylvania.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 42 Pa.C.S. § 931 because the cause of action arose in the Commonwealth of Pennsylvania.

10. Venue is proper in the Court of Common Pleas of Philadelphia County pursuant to Pa.R.C.P. 2179(a)(2) because each of the corporate Defendants regularly conducts business within Philadelphia County.

11. At all relevant times, Defendants marketed, advertised, distributed, and sold consumer products, including electric heated blankets such as the product at issue in this action, within Philadelphia County and derived substantial revenue from those activities.

12. Defendants have systematic and continuous commercial contacts with Philadelphia County and have purposefully availed themselves of the privilege of conducting business within this forum.

13. Defendants distribute, market, license, advertise, and sell consumer goods to retailers and consumers throughout Philadelphia County, including through national retail chains,

[1] *Forry v. Gulf Oil Corporation*, 428 Pa. 334, 237 A.2d 593 (1968)

online commerce, and other distribution channels, and have derived substantial revenue from the sale of such products within Philadelphia County.

14. Upon information and belief, Defendants have engaged in continuous and systematic commercial activities within Philadelphia County, including the sale, distribution, licensing, and marketing of consumer products, including the electric heated blanket at issue in this case.

15. The business activities conducted by Defendants within Philadelphia County are not isolated or sporadic but constitute regular, repeated, and substantial commercial transactions sufficient to establish venue under Pa.R.C.P. 2179(a)(2).

16. Accordingly, jurisdiction and venue are properly laid in the Court of Common Pleas of Philadelphia County, Pennsylvania.

## III. FACTUAL BACKGROUND

17. On or about Black Friday in November 2024, Plaintiff purchased a Koolaburra Brookstone UGG Heated Electric Blanket from a Walmart retail location in Pennsylvania.

18. The electric blanket was marketed and sold as a consumer household product intended to provide safe and controlled warmth during sleep or rest. Defendants represented that the blanket was equipped with temperature controls designed to regulate heat output and prevent overheating.

19. Plaintiff used the blanket in a reasonably foreseeable and intended manner, including placing the blanket over her body while resting.

20. Unknown to Plaintiff at the time of purchase and use, the blanket contained dangerous defects in its heating and temperature control system that rendered the product unreasonably dangerous for its intended use.

21. Within weeks of purchasing the blanket, in or around December 2024, the electric blanket overheated while Plaintiff was using it.

22. The subject blanket failed to properly regulate its temperature and continued to generate excessive heat even after reaching unsafe levels.

23. Instead of properly cycling off to allow the blanket to cool, the blanket reached a dangerous temperature for the user.

24. The controller lacked a temperature feedback mechanism capable of detecting or monitoring the actual temperature within the blanket, meaning the device had no ability to respond to dangerous overheating conditions.

25. These conditions are common and entirely foreseeable during the normal use of an electric blanket, including when a person lies on top of or underneath the blanket.

26. The product failed to incorporate adequate safety mechanisms, including temperature feedback sensors or thermal shut-off systems capable of preventing excessive heat buildup.

27. As a direct result of these defects, the blanket generated dangerously high temperatures while Plaintiff was using it.

28. The excessive heat caused severe burns to Plaintiff's breast, resulting in third-degree burn injuries.

29. Plaintiff required significant medical treatment as a result of these injuries.

30. As a result, in January 2025, Plaintiff underwent surgical removal of her breast implant due to the burn injury and related complications.

31. Plaintiff is a breast cancer survivor who previously underwent reconstructive surgery involving the placement of a breast implant following her cancer treatment.

32. Because of the severity of the burn injury and Plaintiff's medical condition, Plaintiff's physicians have determined that she cannot safely undergo additional reconstructive surgery or receive another breast implant.

33. As a result, Plaintiff has been permanently disfigured and now lives with only one breast.

34. The injury has caused Plaintiff significant physical pain, emotional trauma, humiliation, and psychological distress.

35. Plaintiff has experienced depression and has become socially isolated due to embarrassment and shame regarding her appearance.

36. Plaintiff now rarely engages in public outings except for necessary activities such as obtaining groceries—choosing instead to isolate in light of her condition.

37. Plaintiff frequently wears oversized clothing in an effort to conceal the physical disfigurement caused by Defendants' defective product.

38. Plaintiff's injuries have permanently and dramatically altered her quality of life.

39. The electric blanket was defective and unreasonably dangerous at the time it left the possession and control of Defendants and entered the stream of commerce.

40. At the time the subject electric blanket was designed, manufactured, and sold, safer and economically feasible alternative designs existed that would have significantly reduced or eliminated the risk of overheating and thermal injury.

41. In addition, longer and more effective cooling intervals between heating cycles could have been incorporated into the controller design to allow sufficient time for the blanket to dissipate heat before reactivating the heating elements.

42. These alternative designs were technologically feasible, economically practical, and widely available in the consumer heating products industry at the time the subject blanket was manufactured and sold.

43. The incorporation of one or more of these alternative safety mechanisms would have significantly reduced the risk that the blanket would reach temperatures capable of causing serious burn injuries.

44. The cost of implementing these safety features would have been minimal when compared to the substantial risk of severe injury posed by the defective design of the subject blanket.

45. Defendants either knew or should have known that the failure to incorporate such safety mechanisms created an unreasonable risk of overheating and burn injury to consumers.

46. Despite the availability of these safer alternative designs, Defendants chose to manufacture and sell the subject blanket without adequate temperature monitoring, safety shut-off protections, or effective thermal regulation mechanisms.

47. As a result, the product was defectively designed and unreasonably dangerous when it left the control of Defendants and entered the stream of commerce.

48. As a direct and proximate result of the incident described herein and the defective condition of the subject electric heated blanket, Plaintiff Melissa Yunez sustained severe and permanent injuries including, but not limited to, third-degree burn injuries to her breast and surrounding tissue.

49. As a consequence of these injuries, Plaintiff was required to undergo surgical removal of a breast implant, has suffered permanent disfigurement, and has been left with only one breast.

50. Plaintiff has endured and continues to endure significant physical pain, scarring, emotional distress, humiliation, embarrassment, anxiety, depression, and psychological trauma. Plaintiff has also suffered a loss of self-esteem, loss of enjoyment of life, social withdrawal, and ongoing mental anguish related to the permanent alteration of her physical appearance. In addition, Plaintiff has incurred substantial medical expenses for treatment, surgery, and follow-up care, and may require additional medical care, treatment, and psychological counseling in the future as a result of the injuries caused by Defendants' defective product.

**COUNT I**

**STRICT LIABILITY (MANUFACTURING/ DESIGN DEFECT)**
**Melissa Yunez**
**v.**
**Walmart, Inc. a/ka Walmart, CHF Industries, Inc. a/k/a CHF Home Furnishings a/k/a CHF Industries, Bluestar Alliance LLC a/k/a Bluestar Alliance d/b/a Brookstone, Deckers Outdoor Corporation a/k/a Deckers Brands a/k/a Decker Outdoor and d/b/a Koolaburra by UGG**

51. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

52. At all relevant times, Defendants were engaged in the business of designing, manufacturing, assembling, marketing, distributing, and/or selling the product that is the subject of this action (the "Product").

53. The Product was expected to and did reach consumers, including Plaintiff, without substantial change in the condition in which it was designed, manufactured, marketed, and sold by Defendant.

54. At the time the Product left the possession and control of Defendant, the Product was in a defective condition that rendered it unreasonably dangerous for its intended and reasonably foreseeable uses.

55. The Product was defective due to one or more manufacturing defects in that the Product deviated from Defendant's intended design, specifications, or performance standards.

56. Alternatively or additionally, the Product was defectively designed in that the foreseeable risks of harm posed by the Product could have been reduced or avoided by the adoption of a reasonable alternative design, and the omission of such alternative design rendered the Product not reasonably safe.

57. The defective condition of the Product existed at the time it left the control of Defendant.

58. Plaintiff used the Product in a manner that was intended or reasonably foreseeable by Defendant.

59. As a direct and proximate result of the Product's defective and unreasonably dangerous condition, Plaintiff sustained serious injuries and damages.

60. Defendant is strictly liable for the injuries and damages sustained by Plaintiff because the Product was sold and distributed in a defective and unreasonably dangerous condition.

61. As a result of Defendant's conduct and the defective condition of the Product, Plaintiff has suffered damages including, but not limited to, physical injury, pain and suffering, medical expenses, lost wages, loss of earning capacity, and other damages permitted by law.

**COUNT II**
**FAILURE TO WARN**
**Melissa Yunez**
**v.**
**Walmart, Inc. a/ka Walmart, CHF Industries, Inc. a/k/a CHF Home Furnishings a/k/a CHF Industries, Bluestar Alliance LLC a/k/a Bluestar Alliance d/b/a Brookstone, Deckers Outdoor Corporation a/k/a Deckers Brands a/k/a Decker Outdoor and d/b/a Koolaburra by UGG**

62. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

63. At all relevant times, Defendant designed, manufactured, marketed, distributed, and/or sold the product that is the subject of this action (the "Product"), including the electric blanket used by Plaintiff.

64. At the time the Product left the possession and control of Defendant, the Product contained risks and dangers that were known or reasonably knowable to Defendant in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution.

65. The Product posed a risk of overheating and causing thermal burns during normal and intended use.

66. Defendant failed to provide adequate warnings or instructions regarding the risk that the Product could overheat and cause burn injuries during normal use.

67. Defendant further failed to adequately warn consumers of the severity and likelihood of burn injuries associated with overheating of the Product.

68. The warnings and instructions that accompanied the Product, if any, were inadequate in content, prominence, and clarity to reasonably inform users of the risks associated with use of the Product.

69. Defendant knew or should have known that consumers, including Plaintiff, would use the Product in a reasonably foreseeable manner and would be exposed to the risk of injury if adequate warnings were not provided.

70. Had adequate warnings and instructions been provided, Plaintiff would have avoided the risk or used the Product in a manner that would have prevented the injuries sustained.

71. As a direct and proximate result of Defendant's failure to provide adequate warnings and instructions, Plaintiff sustained serious injuries and damages.

72. The absence of adequate warnings and instructions rendered the product unreasonably dangerous to consumers.

73. Defendant is strictly liable for Plaintiff's injuries because the Product was defective due to inadequate warnings and instructions at the time it left Defendant's control.

74. As a result of Defendant's conduct, Plaintiff suffered damages including but not limited to physical injuries, pain and suffering, medical expenses, lost wages, loss of earning capacity, and other damages permitted by law.

**COUNT IV**

**NEGLIGENCE**

**Melissa Yunez**
**v.**
**Walmart, Inc. a/ka Walmart, CHF Industries, Inc. a/k/a CHF Home Furnishings a/k/a CHF Industries, Bluestar Alliance LLC a/k/a Bluestar Alliance d/b/a Brookstone, Deckers Outdoor Corporation a/k/a Deckers Brands a/k/a Decker Outdoor and d/b/a Koolaburra by UGG**

75. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

76. Plaintiff incorporates by reference and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

77. At all relevant times, Defendants owed a duty to Plaintiff and other foreseeable users and consumers to exercise reasonable care in the design, manufacture, assembly, testing, inspection, certification, marketing, distribution, and sale of the electric heated blanket.

78. Under Pennsylvania law, a party is negligent when it fails to exercise the degree of care that a reasonably prudent manufacturer, designer, distributor, or seller would exercise under similar circumstances.

79. Defendants breached their duty of reasonable care by, inter alia:

a. Negligently designing the Product so that it was prone to overheating;

b. Negligently manufacturing and assembling the Product such that it deviated from safe design specifications;
c. Failing to properly test and inspect the Product to ensure it was safe for consumer use;
d. Failing to implement adequate quality control procedures;
e. Failing to identify and correct defects that caused the Product to overheat;
f. Failing to provide adequate warnings or instructions regarding the risk of overheating and burn injuries;
g. Failing to properly and safely design the electric heated blanket so as to prevent dangerous overheating;
h. Failing to incorporate adequate temperature monitoring and feedback systems capable of detecting excessive heat buildup;
i. Failing to incorporate adequate thermal shut-off mechanisms or other safety features to prevent the blanket from reaching unsafe temperatures;
j. Failing to adequately test and inspect the electric heated blanket prior to placing it into the stream of commerce;
k. Failing to implement feasible and reasonable alternative safety designs available at the time the product was manufactured and sold; and
l. Otherwise failing to exercise reasonable care under the circumstances.

80. Defendants knew or should have known that the subject electric heated blanket, if improperly designed, manufactured, or tested, could overheat and cause serious burn injuries to consumers.

81. Despite this knowledge, Defendants negligently designed, manufactured, tested, marketed, distributed, and sold the defective electric heated blanket described herein.

82. As a direct and proximate result of Defendants' negligence, the electric heated blanket overheated while being used by Plaintiff in a reasonably foreseeable manner.

83. As a direct and proximate result of Defendants' negligent conduct, Plaintiff sustained severe and permanent injuries, including but not limited to third-degree burns, surgical removal of a breast implant, permanent disfigurement, physical pain and suffering, emotional distress, humiliation, and loss of enjoyment of life.

84. Plaintiff has incurred substantial medical expenses and will continue to incur expenses for medical care, treatment, and psychological counseling in the future as a result of the injuries caused by Defendants' negligence.

**COUNT V**

**BREACH OF EXPRESS WARRANTY AND IMPLIED WARRANTY OF MERCHANTABILITY**

**Melissa Yunez**
**v.**
**Walmart, Inc. a/ka Walmart, CHF Industries, Inc. a/k/a CHF Home Furnishings a/k/a CHF Industries, Bluestar Alliance LLC a/k/a Bluestar Alliance d/b/a Brookstone, Deckers Outdoor Corporation a/k/a Deckers Brands a/k/a Decker Outdoor and d/b/a Koolaburra by UGG**

85. Plaintiff incorporates by reference and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

86. At all relevant times, Defendants were merchants engaged in the business of designing, manufacturing, marketing, distributing, and selling electric heated blankets and similar consumer household products.

87. At the time the subject electric heated blanket was designed, manufactured, marketed, distributed, and sold, Defendants made express and implied representations that the product was safe, reliable, and suitable for its intended use as a household electric blanket designed to provide controlled warmth during rest or sleep.

88. Defendants expressly warranted, through product labeling, packaging, marketing materials, and representations to consumers, that the electric heated blanket was safe for ordinary household use and equipped with temperature controls designed to regulate heat output and prevent overheating.

89. Specifically, the labels that accompanied the packaging stated: "This product is not a heating pad. It will not feel 'hot' to the touch, however, it will feel warm when in use. It is designed to reach maximum temperature for safety." These statements represented to consumers that the blanket would maintain a safe operating temperature and would not become excessively hot during normal use.

90. Defendants further impliedly warranted, pursuant to Pennsylvania law including 13 Pa.C.S. § 2314, that the electric heated blanket was merchantable and fit for the ordinary purposes for which such goods are used.

91. The subject electric heated blanket was not merchantable and was not fit for its ordinary and intended purpose because it was defectively designed and manufactured in that it lacked adequate temperature monitoring, thermal regulation, and safety shut-off mechanisms necessary to prevent dangerous overheating.

92. The electric heated blanket failed to conform to Defendants' express warranties and failed to perform safely as represented when used in a reasonably foreseeable manner.

93. At the time the product left the possession and control of Defendants, it was in a defective and unreasonably dangerous condition and therefore did not comply with the express warranties made by Defendants.

94. Plaintiff purchased and used the electric heated blanket in reliance upon Defendants' express and implied warranties that the product was safe and suitable for its intended household use.

95. As a direct and proximate result of Defendants' breach of express warranties and breach of the implied warranty of merchantability, the electric heated blanket overheated while being used by Plaintiff in a reasonably foreseeable manner.

96. As a direct and proximate result of these breaches of warranty, Plaintiff sustained severe and permanent injuries including, but not limited to, third-degree burns, surgical removal of a breast implant, permanent disfigurement, physical pain and suffering, emotional distress, humiliation, and loss of enjoyment of life.

97. Plaintiff has incurred substantial medical expenses and will continue to incur expenses for medical care, treatment, and psychological counseling as a result of the injuries caused by Defendants' breaches of warranty.

98. Accordingly, Defendants are liable to Plaintiff for all damages resulting from their breach of express warranties and breach of the implied warranty of merchantability.

## COUNT VI

## VIOLATIONS OF APPLICABLE STATE CONSUMER PROTECTION AND UNFAIR AND DECEPTIVE TRADE PRACTICES LAWS

**Melissa Yunez**
**v.**
**Walmart, Inc. a/ka Walmart, CHF Industries, Inc. a/k/a CHF Home Furnishings a/k/a CHF Industries, Bluestar Alliance LLC a/k/a Bluestar Alliance d/b/a Brookstone, Deckers Outdoor Corporation a/k/a Deckers Brands a/k/a Decker Outdoor and d/b/a Koolaburra by UGG**

83. Plaintiff incorporates by reference and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

84. At all relevant times, Defendants were engaged in trade and commerce involving the design, manufacture, marketing, distribution, licensing, and sale of consumer household products, including electric heated blankets.

85. Defendants advertised, marketed, labeled, promoted, and sold the subject electric heated blanket as a safe and reliable consumer household product suitable for ordinary use during rest or sleep.

86. Defendants represented to consumers, including Plaintiff, that the electric heated blanket contained temperature control features designed to regulate heat output and prevent overheating.

87. These representations were material to consumers purchasing and using the product.

88. Defendants engaged in unfair, deceptive, misleading, and unconscionable business practices in connection with the marketing and sale of the subject electric heated blanket, including but not limited to:

i. Representing that the electric heated blanket was safe for ordinary consumer use when Defendants knew or should have known that the product contained defects that could allow dangerous overheating;
ii. Failing to disclose known or reasonably discoverable risks that the blanket could generate excessive and dangerous levels of heat during normal and foreseeable use;
iii. Failing to disclose that the temperature controller lacked adequate feedback mechanisms capable of monitoring the actual temperature of the blanket;
iv. Failing to disclose that the blanket lacked adequate safety shut-off mechanisms necessary to prevent dangerous thermal buildup;
v. Marketing and distributing the product despite knowledge, or constructive knowledge, that safer and economically feasible alternative designs existed that would have significantly reduced the risk of overheating and burn injuries;
vi. Representing that the product possessed safety characteristics, features, or benefits that it did not actually possess.

89. These deceptive and unfair acts and practices created a likelihood of confusion or misunderstanding among consumers regarding the safety and performance of the electric heated blanket.

90. Plaintiff purchased the electric heated blanket in reliance upon Defendants' representations and omissions regarding the safety and quality of the product.

91. Plaintiff was a consumer who purchased the electric heated blanket for personal, family, and household use.

92. Defendants' conduct constitutes unfair or deceptive acts or practices in violation of applicable consumer protection and unfair trade practices laws, including but not limited to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

93. As a direct and proximate result of Defendants' unlawful, deceptive, and unfair conduct, Plaintiff suffered ascertainable losses and damages, including physical injury, medical expenses, emotional distress, and other economic and non-economic damages.

94. Plaintiff is therefore entitled to recover all damages and relief permitted under applicable consumer protection statutes, including compensatory damages, treble damages where permitted, attorneys' fees, costs of suit, and such other relief as the Court deems just and proper.

**COUNT VII**

**LOSS OF CONSORTIUM**

**Yesid Yunez**
**v.**
**Walmart, Inc. a/ka Walmart, CHF Industries, Inc. a/k/a CHF Home Furnishings a/k/a CHF Industries, Bluestar Alliance LLC a/k/a Bluestar Alliance d/b/a Brookstone, Deckers Outdoor Corporation a/k/a Deckers Brands a/k/a Decker Outdoor and d/b/a Koolaburra by UGG**

95. Plaintiff, Yesid Yunez, incorporates by reference and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

96. Plaintiff, Yesid Yunez, is the lawful husband of Plaintiff Melissa Yunez and was so at all times relevant hereto.

97. As a direct and proximate result of the negligent, reckless, and otherwise wrongful conduct of Defendants, and the defective condition of the product described herein, Plaintiff Melissa Yunez sustained severe, permanent, and disfiguring injuries.

98. As a direct and proximate result of the aforesaid injuries to his wife, Plaintiff Yesid Yunez has suffered and will continue to suffer the loss of the society, companionship, comfort, affection, assistance, services, support, and consortium of his wife.

99. Plaintiff Yesid Yunez has further suffered the loss of marital relations, emotional support, and the overall benefits of the marital relationship.

100. These losses are ongoing in nature and are reasonably expected to continue into the future.

101. As a direct and proximate result of Defendants' conduct, Plaintiff Yesid Yunez has sustained damages as permitted under the laws of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiff Yesid Yunez demands judgment against all Defendants, jointly and severally, for damages in an amount in excess of the jurisdictional limits of this Court, together with costs of suit, delay damages, and such other relief as this Court deems just and proper.

## IV. DAMAGES

102. As a direct and proximate result of Defendants' conduct and the defective product, Plaintiff suffered severe physical injuries including third-degree burns and the surgical removal of her breast implant.

103. Plaintiff has sustained permanent disfigurement and has been left with lifelong physical and psychological consequences.

104. Plaintiff has incurred substantial medical expenses and will continue to incur expenses for medical care, treatment, and psychological counseling.

105. Plaintiff has suffered significant pain and suffering, emotional distress, embarrassment, humiliation, and loss of enjoyment of life.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Melissa Yunez demands judgment against Defendants and requests the following relief:

106. At all times relevant hereto, Defendants engaged in willful, wanton, reckless, and outrageous conduct, demonstrating a conscious and blatant disregard for the health, safety, and rights of Plaintiff, and for the foreseeable consequences of their actions and omissions.

107. Compensatory damages in an amount to be proven at trial, and in excess of the jurisdictional minimum of this Court, including but not limited to damages for:

- Past and future medical expenses;
- Costs of hospitalization, diagnostic testing, surgical intervention, and follow-up care;
- Physical pain and suffering;
- Emotional distress, anxiety, fear, and loss of enjoyment of life;
- Permanent injury, impairment, and disability.

108. Special and consequential damages, including out-of-pocket expenses, future medical monitoring and treatment costs, and all other economic losses proximately caused by Defendants' wrongful conduct.

109. Punitive and exemplary damages, in an amount sufficient to punish Defendants and to deter similar misconduct, based on Defendants' reckless indifference, conscious disregard of known safety risks, reckless and willful failure to comply with FDA safety warnings, and deliberate inaction in the face of foreseeable and life-threatening harm.

110. Costs of suit, pre- and post-judgment interest as allowed by law, and reasonable attorneys' fees to the extent permitted by statute, rule, or equity.

111. Such other and further relief—whether legal, equitable, or injunctive—as the Court deems just, proper, and necessary under the circumstances.

JURY TRIAL DEMANDED.

LEESON & LEESON

BY: *//s// Joseph F. Leeson, III*

JOSEPH F. LEESON, III, ESQUIRE
Attorney for Plaintiffs
PA Bar Id. No. 328520
70 East Broad Street
Bethlehem, PA 18016
(610) 691-3320
jleeson@leeson-law.com

**VERIFICATION**

I, Melissa Yunez, state that I am the Plaintiff in this action and verify that the statements made in the foregoing response to the discovery requests of Defendant(s) are true and correct to the best of my knowledge, information and belief. The verification and statements therein are made pursuant to Pa. R.C.P. 1024(c)(2). The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

MELISSA YUNEZ
Plaintiff

Dropbox Sign

Audit trail

| | |
|---|---|
| **Title** | VERIFICATION.pdf |
| **File name** | VERIFICATION.pdf |
| **Document ID** | 2b3aa054359dbbdfff910e9875e4bd5517dba85d |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ○ Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| SENT | **05 / 20 / 2026**<br>17:52:57 UTC | Sent for signature to Melissa Yunez (missy.yunez@icloud.com) by services@clio.com acting on behalf of pkoste@leeson-law.com<br>IP: 131.106.76.138 |
| VIEWED | **05 / 20 / 2026**<br>19:12:42 UTC | Viewed by Melissa Yunez (missy.yunez@icloud.com)<br>IP: 216.103.116.5 |
| SIGNED | **05 / 20 / 2026**<br>19:13:31 UTC | Signed by Melissa Yunez (missy.yunez@icloud.com)<br>IP: 216.103.116.5 |
| COMPLETED | **05 / 20 / 2026**<br>19:13:31 UTC | The document has been completed. |